at all, versus State of New York at all? Good morning, Mr. Sussman. You're reserved two minutes, and you can begin whenever you're ready. Thank you, Your Honor. May it please the Court, Michael Sussman from Goshen. The appellants are nurse practitioners who work for Appellee State of New York, which pays their salaries. The Appellee New York State Department of Civil Service sets the grade for all NPs 24, which is well inferior to those grades set for male-dominated professionals. That's the gravamen of the case. A title's grade determines the employee's salary, pension rights. Indisputably, whether or not a specific title like NP has a career ladder associated with it, that is, a progression of grades with increasing salaries, is determined by the Department of Civil Service. And the complaint makes that clear. Likewise, indisputably, setting the employee's grade is not done by separate agencies for which each appellant works, putative class members work. Rather, the grade is uniform across every agency for the roughly 200 employees who hold this job title for New York State. Your Honor. You're relying on the joint employer theory? Someone earlier mentioned common sense. I'm relying on Title VII's. On page 14 of the brief, you say that while an employer-employee relationship is a necessary element, in certain circumstances, an employee may assert employer liability against an entity that is not formally his or her employer. Courts have recognized two doctrines to establish such relationship. The single-employer doctrine and the joint-employer doctrine. In this case, the joint-employer doctrine applies.  Do I read that as, correctly, as disavowing any claim under the single-employer  No. That's what I was about to say. I think common sense tells us here that this is a single-employer case. However, the doctrine that's been developed, and Your Honor pointed this out in your dissent in the Felder case, the doctrines are incongruous to some extent. They, in other words, they go so far and make no sense. Well, I'm trying to figure out who the employers are. The employer is. Well, you tell me, then. The employer is the State of New York. That's number one. Number two, these individuals work for separate agencies. But the terms. Aren't those agencies just arms of the State? That's correct. They're just arms of the State. Therefore, they should never have been viewed as instrumentalities distinct and people we needed to name. They have nothing to do with setting the terms and conditions, critical terms and conditions, of employment. So I take your common sense point. I mean, if we were dealing with a private employer and we had a parent company and a subsidiary, right? So, sorry. We had a parent company and a subsidiary. It could be that your direct employer is the subsidiary, but the parent company sets some terms of your employment. And that's the paradigmatic case in which we apply the single employer doctrine. We say, actually, the parent company and the subsidiary are part of one enterprise, and so it's a single employer. So I get the intuition that the State of New York is like the parent company and a State agency is a subsidiary. But for better or for worse, didn't we say in Galeno that we do not apply the single employer doctrine to State employment? And therefore, we only focus on the particular agency that acts as the employer? Maybe that was wrong, but that is a prior precedent. All right. Galeno is not controlling. And the interests that are expressed in Galeno, which are the interests of Federalism — and let me just explain for a moment. What Galeno was was a test which was promulgated by the State and had to be administered by the New York City school district. It was allegedly racially discriminatory and found to be racially discriminatory. New York State was found not to be either a joint employer or a single employer. It's not an employer at all because the State is the employer in Galeno. And the terms and conditions of relevance, that is, salary, grade, pensionability, classification, were all done by the New York City school board. It's called the Department of Education in New York. And Galeno, therefore, and the Court in Galeno, in Judge Wesley's extensive opinion, explains that had Title VII been applied and made the State the employer, that would have messed with Federalism concepts because it would have imposed a Federal requirement. Well, it does say this, right? So it says the single or joint employer test utilizes a four-factored analysis developed by the NLRB to determine whether two or more employers can be treated as one for purposes of assigning liability. Extending this theory to cases involving the complex relations between levels of government would be impracticable and would implicate the same constitutional concerns that we discussed about the joint job interference test. So there's impracticability, and then there's the constitutional concerns, which he says if you could impose liability on the entire State, it would alter the power of the Federal government and the State government. I mean, I take it from your expression that you're skeptical that's true. No, no, I'm not. You might be right. No, I agree with you. That is a holding that says for State employers, we don't apply this test. We just look at the particular agency that's the direct employer. But New York City is not an agency of New York State. Exactly. Isn't that what you're about to say? New York City is its own thing. And the constitutional implication would be that the United States and the United States court is telling the New York State that it has to be responsible for municipal corporations' actions. Here we have entities that are just arms of the State.  The only alternative employer besides the State here is, for example, SUNY. For purposes of sovereign immunity, SUNY is just an arm of the State for any other purpose. Who do we have here? The Office of Mental Health. They're probably not even a suable entity. Correct. Judge Menaschi, in the decision you're referring to, the following appears, and I have 26 to 48 in a slip opinion. Local school districts in the State of New York are not merely agencies of the State, comma, and neither the Board of Regents nor the Commissioner of Education exercise plenary control over public schools. The point is this. Here we have the converse situation. We have the State of New York. But that wasn't the case where the State was setting an employment term. I'm sorry. That was a case where the State was setting an employment term that applied to the city employees, right? Which is another reason it's distinguishable, because here — I know, but that's what's happening here, too. No, no. The State is setting a term that applies to the agency employees. Their own — their own employees — I normally think about municipalities as a creature of the State. But you're saying we should understand Galeno only to be about saying we're not going to apply the single employer doctrine when the subagency is a municipality. But if the subagency is a State agency, we will still apply it. Judge — Is that right? That's what you're saying. I can agree with that. Galeno doesn't reach this issue. I think that's what I'm trying to explain. Galeno is — Sorry, Judge Brown. Galeno may be distinguishable, but there's no case that says what Judge Lynch is saying, basically, that if you're — if you work for the State, even if it's for an entity, if you work for the State, even if it's for a particular entity, you could sue the State itself. There's no case that under Title VII. There's no case that says that, right? Well, in a way, yes, there are cases that say that. If you look at Simpson, for example, Simpson v. State of New York, Simpson was a class action that was brought because of a discriminatory test promulgated by the New York State Department of Civil Service. We sued the Department of Civil Service under Title VII in that case, as well as the State of New York. We didn't sue every agency that employed the 4,700 African-American and Hispanic plaintiffs. We ended up settling the case for $45 million. No one ever raised a question that Title VII didn't apply because we didn't sue each agency. But in that one, you sued both. You sued, right? As we did here. And the Department — we did that here. We sued the Department of Civil Service. That's the whole point. We sued the entity which sets the standards that are contractual. I noticed that just as a matter of ordinary language, the Department of Civil Service is not the employer of your clients, right? It is not the employer of my clients. The State's the employer of my clients. The Department of Civil Service — So, in fact, the relevant thing is not the Department of Civil Service. It's whether we can treat the State of New York as, like, a parent company of the university health system or something like that. The State of New York, respectfully, has delegated the function. This is where I don't understand quite what the district court is missing, because it's clear from the complaint, if one looks at paragraphs 42, 46, 66, and 76, it's clear that the complaint is assertive, that the State has delegated to the Department of Civil Service, not to each of the individual 20 agencies for whom these 200 people work. So if you could understand the State and the State agency that's the direct employer as a joint enterprise and, therefore, a single employer, it would matter that the parent company has delegated some employment term to another, to the Department of Civil Service. But if you can't do that, if you have to only sue the direct employer, then it wouldn't matter that the State of New York has delegated the employment rate determination to the Department of Civil Service. So it hinges on whether we apply the single employer doctrine to the State. But the latter makes no sense, and the reason it makes no sense in this case is each of these agencies that we were forced to sue, a multiplicity of agencies, has nothing to do with setting the terms and conditions which we believe are discriminatory. Why does that make no sense? Like, I don't really get that either. So oftentimes the legislature will pass a law, and you can't sue the legislature. You sue the executive official who's responsible for enforcing the law. It's never a defense of the executive official to say, well, I don't have any discretion. Like, just the – that's what the legislature says, right? We can't say you can't – you can't enforce a discriminatory law. So, like, why couldn't you sue the direct employer? And it wouldn't be a defense for them to say, we're just doing what the Department of Civil Service tells us to do. If it's discriminatory, then the employer is discriminating. The problem is that what that would invite is a multiplicity of lawsuits against 20 separate agencies, each of whom are doing the same thing with respect to the same class of employees, nurse practitioners, which was dictated and delegated for dictation by the Department of Civil Service. Why create that structure when they're all a unitary part of the State? It makes no sense. Sotomayor, Title VII says you're supposed to sue your employer. The employer is the State. Even if a bunch of employers are doing different things, you might have to sue all of them. I don't know why you're talking about the class action issues. We're not up to class actions. You may not be able to. I don't know whether you'll be able to certify a class or not. Isn't the relevant issue, can you even sue something called the Office of Mental Health of New York State without being told? If it was an ordinary tort suit, you'd be told you can't sue them because they are the State and the State has sovereign immunity. Right? They are just the State. That's all they are, is an arm of the State. It's not like New York City, which you can sue. I'm agreeing. I agree with you.  Couldn't agree more. Thank you. All right. But the whole reason that you're suing the State or the State agency is because Title VII aggregates sovereign immunity, right? So that's just not a — like, it would prevent you from suing either of the employer or of the State. So if that were an issue, then nothing would — But I think what Judge Lynch is saying, and this has come up in many cases, is when we sue a separate agency — and this came up, for instance, in the Penns case, we sued the Department of Corrections. The judge threw out the — dismissed the case against the Department of Corrections and said, you're suing the State of New York. I'll keep the State of New York, but not the Department, because it's an instrumentality of the State. I mean, I don't respectfully — these are interesting issues, but the fundamental question is to get to whether the State qua State, which is ultimately the employer, is engaging in discrimination. And that's what we've been prevented from doing. All right. Thank you. All right. Ms. Rosenbluth. Good morning, Your Honors. May it please the Court, Sarah Rosenbluth, Rappalese. The district court correctly dismissed the complaint due to plaintiff's failure to allege the existence of any employment relationship with any defendant, and the Court should affirm. Is every one of these nurse practitioners not an employee of New York State? The employer is the agency that they work for. And what says that? And what says that? So — Where does the check come from when they get their paycheck? I believe it's from the agency. It's not from the State Treasury? Well, I mean, the funds — I mean, agencies have their own budgets, and they are paid out of agency budgets. And, I mean, I'm an employee of the attorney general's office. I get paid by the attorney — I mean, I can speak to more of what my pay stub says, which is from the AG's office, yes. If they sued the Office of Mental Health — Yes. Wouldn't the argument be that is not a suable entity? No. Well, as Judge Manasci said, that Title VII abrogates sovereign immunity with respect to — It abrogates sovereign immunity. That's not my question. Okay. If it were a tort suit — Right. — they would share the State's sovereign immunity because they are an arm of the State. But I'm raising a different question. The New York City Police Department, for example, is not a suable entity. You have to sue New York City because the New York City Police Department is not a separate entity. The same is true at the State level. Is it not? I don't think that's right. I mean, I've personally defended various State agencies in Title VII lawsuits before this Court, for example, the Department of Labor and so forth. So you definitely can sue an agency. And when you lose that lawsuit — maybe you never do. You're probably very good at this. But if you lost one of those lawsuits, where would the damages get paid from? So it would come — I believe it's from the agency's budget. It would be different in a 1983 case because those are representing individual officers. There's a different fund for those. But ultimately they're all State funds, right? That's right. But I mean, I think — But if he brought the claim under Title VII against the Office of Mental Health — Yes. — you would say they're the employer, right? Yes. But you would then say, I think, well, this claim — they have no control of the civil service classification. So this Title VII claim should be dismissed because it's ultimately the DCS that sets the criteria. Isn't that what you would say? So, I mean, I can't say exactly how that litigation would play out. I mean, I think that would be possibly an available argument. However, however, I mean, certainly if they did — But we don't know for sure it would be an available argument, right? I mean, under Title VII, the employer is supposed to protect employees from all sorts of discrimination by third parties, even if they don't control the third parties. Yeah, I don't — And it still is a term of employment, and it might be that they're discriminating, even if the discrimination is dictated by another state body, right? Yeah, I'm not sure it would be a successful argument. I can leave that to another day. I mean, I think something that's useful to note for this Court is from the De Silva case, which we cite in our brief from the Seventh Circuit. And there the Court said the agency-specific approach ensures that the defendant is the one that can supply a remedy, such as reinstatement or — Yes, such as reinstatement. In other words, if you were being — if you were suing because one of his clients, who was working for the Office of Mental Health or for SUNY Binghamton's student health clinic, and they fired that person for a discriminatory reason, then they would be the logical entity to provide a remedy, right?  But there is no such remedy here. And suppose the — you know, to simplify it a little bit, hypothetical, suppose the Department of Civil Service said nurse practitioners shall be paid X dollars if they are male. But if they are female, they get 75 percent of that. Yes. Obviously, that would be illegal, right? Correct. Who gets sued? DCS under 1983, I would say, the individual officers, because that — The individual officers? Well, under a 1983 lawsuit, you have to — it's an individual. But what about under Title VII? You can't sue the individuals. Right. So I think — I think that what happened there, and this is an important point that I'd like to make, that the — really the central theme of my argument today is that Title VII is a poor fit for this theory. However, there are a number of other remedies available.  Why is it a poor fit for the theory? The theory is that the terms and conditions of employment are unfair to women. Now, that — on the merits — Yes. This is sort of a disparate intent. Sure. Yes. In this case, it's not had — this kind of case has not had a lot of success in the world and other jurisdictions. Sure, sure. But that's not what we're facing here yet, is whether this is a viable lawsuit in terms of stating a claim of intentional discrimination. Right. But it's very — the case law — first of all, the text of Title VII is very clear that you — that the entity liable is the employer. What makes them an employer is very clear in the case law. We have no — none of the hallmark elements of control in this case. But we have control — Excuse me. We have control over the very thing that is the discrimination. I understand. And if I could just get to my point about how you address this, it's, for example, in Article 78 proceeding in state court is a great way — So I back up your argument that Article 78 is available to challenge the DCS determinations and 1983 is available to sue the DCS. But Title VII is also a statute. Yes. So I just want to focus on how you get relief for discriminatory payments from your employer. I mean, we said a moment ago something about understanding where the natural place is to provide a remedy. You know, you would agree, and the Supreme Court has recently emphasized, like, we provide remedies to the parties before the court, right, not like other parties, right?  So if the employer of one state agency sues the DCS and gets them to change the grades and the salaries and whatever, that would apply statewide, right? Yes. But the only remedy that's appropriate would be a remedy that runs to that particular employee, right? Yes. So it makes more sense to have an order that attaches to the employer that pays that employee to eliminate the discrimination, right? Right. And so, I mean, I think there's a way in which a future lawsuit could sue the conceded actual employers. I mean, you could also name DCS as a defendant, you know, not to give a roadmap to a future lawsuit. But, I mean, I think if you did that, you'd have the party there that has the ability to provide the relief. And just one other remedy that I'd like to note. And in the cases that I was mentioning where an employer, you know, is sued because they failed to protect the employee from discrimination by a third party, right, you don't sue the third party as the employer. Correct. You sue the employer because it's the employer that controls the terms and conditions of employment, even if they don't have control over the third party that intervenes. They're supposed to do whatever they can within the context to protect the employee. No, I would agree with that. And the point that I want to make about the possible remedy, and I understand, of course, we're talking about Title VII, but I just think that there are a number of ways of getting at any alleged illegality, which we do take seriously. First of all, as I mentioned, it's not just in Article 78 in the abstract. The plaintiffs here did go through the administrative process, and they quite admirably, you know, utilized the political process to meet with the governor, to meet with his— They must have a federal remedy, too, though. It can't be they just have Article VII. Oh, for sure. They have in 1983. Why can't you bring a Title VII? You see people going back and forth saying, well, they just didn't sue the correct entity, and saying, well, Title VII doesn't really apply here. If they brought this suit against the Office for Persons with Developmental Disabilities and the State University at Oswego and the Department of Correction and Community Supervision and the Office of Mental Health, they named all those entities, and they threw in DCS. Yes. And they bring a Title VII claim for exactly what Mr. Sussman is claiming. I think that would be a harder case for us, and we will litigate that case in due course, I'm sure. You wouldn't say Title VII doesn't apply there, right? Probably not, no. But just the last point I want to make, but I'll try to understand. Why make them go through that step, though? Why, as Judgment pointed out, why just not sue the entity that controls this classification? Because we're bound by the text of the statute, and they haven't sued their employer, and the case law is clear. And I believe they do concede that DCS is not their formal employer, and they're trying to proceed under, A, a joint employer theory, which still requires factual allegations regarding control, or, B, an interference theory, which is a very narrow theory, which has been. I would just like to think about this. So you get the logic that when we're talking about private employers, if there's a parent company and a subsidiary, and the parent company sets the terms of employment of a subsidiary, that's when we apply the single employer doctrine. We say it's really one enterprise, and both the parent company and the subsidiary are an employer. So I said to Mr. Sussman that it seems like in Galeno we said that that just doesn't apply to state employers, and he said, well, Galeno is really about municipality, not other state agencies. So I guess, first of all, do you think that that's right, or should we say that in Galeno that it doesn't apply to state employers, period? I think it's the latter. I mean, I do concede that Galeno is distinguishable on a narrow ground, which is that you did have the different levels of government at play there that you don't have here. But otherwise, I think Galeno is entirely controlling. So why would you? Why would you? Could you explain why it makes sense to have ‑‑ I understand why it makes sense where you have the municipal employer. Why does that not make sense? And it's an even stronger case than the private one, right, because in the private one you have separate legal entities in the subsidiary and the parent corporation. Here you don't even have that problem to get over. There's no confusion about piercing the corporate bail or anything else. You've got New York State, and all of these subsidiary entities are not independent corporations that operate on their own. They are arms of the state for almost all purposes. They are arms of the state, but the state only acts through its individual agencies, and the state of New York itself just does not, like ‑‑ It's like saying the corporation, a private corporation, could, like, incorporate its personnel office, which is what the Department of Civil Service is kind of doing, incorporate its personnel office as a separate corporation, and then disavow everything that that corporation does. I mean, certainly we don't ‑‑ The state is the entity, the real thing, of which both the Department of Civil Service and SUNY Binghamton and the Office of Mental Health are all arms. Of course, and we don't purport to disavow what DCS has done. The state of New York doesn't. It's just a matter of just practically speaking, how do you get relief here? And you can't ‑‑ and I think the De Silva case makes this clear, but the state of New York acts through its attorney general. So it's not just that it's acting through. I mean, is it a possible answer that it is about the way the state exercises control so a parent company can decide how a subsidiary acts towards its employees? The state, in principle, can dictate how state agencies act, but the way it generally does that is the legislature passes generally applicable laws and a state regulator passes generally applicable regulations, like the DCS adopts a regulation that applies to all state agencies, not just the employer of these particular plaintiffs. And so if you're trying to provide relief to a particular plaintiff, then you'd be ordering DCS to modify its grade and salary determinations only for an employee at one particular agency. Right. That's why it becomes complicated, right? Yes. If the state operates differently than private employers, it's more important to focus on the particular employer to provide a remedy to the particular plaintiff. I think that's exactly right. And if I could just make one final point, which is that a large part of the crux, the factual crux of the complaint is that the plaintiff and nurse practitioners are performing work that should be done or that is done by a psychiatrist and they feel that they are entitled to compensation for that. The collective bargaining agreement, which is a public document, Article 17 of this, they have a bargain for right to submit out-of-title work grievances. There's a whole process for that. And if they are correct that they are performing the work that should be done by a psychiatrist, they will get compensation for that. And, in fact, other nurse practitioners, I believe, who are similarly situated, some of them have been successful. So that's just yet another way. So those collective bargaining agreements, are they signed per agency or does it apply to all state employees across all agencies? So this one is PEF, and it's the Professional Technical and Scientific Unit, of which I believe plaintiffs are members. Who's on the other side is what the question was. Yes. I mean, I take the point that the state's on the other side of that. The entire state. It's a collective bargaining agreement with all state employees? I believe so. I mean, I think it's represented. But so in this case, there's some nurse practitioners who work, say, at corrections facilities and some that work at health services and so on. Would they all be covered by the same collective bargaining agreement? Yes, I believe so. All right. Thank you. Thank you very much. All right. Mr. Sussman, you have two minutes. I think the fundamental issue in this case is that New York State has, in fact, delegated to an instrumentality of the state the right and the responsibility to determine the essential term and condition of employment. But that argument only matters if New York State is the employer, right? I agree that if New York State is the employer, it delegates the responsibility for determining the term of employment to an agent, and that agent is acting on behalf of the employer. But you first need to establish who the employer is. But it's a tautology because what you're – what you're saying is that the state is the employer by who sets the principal terms and conditions of employment. And I'm saying to you, and the complaint makes clear, that the entity that sets the terms and conditions of employment sets them not by individual agency, sets them generally for this category of employees through the state. The problem is that there are, of course, different arms of the state that determine different terms and conditions of employment, right? Because it is the immediate agency that hires and fires, for example.  It is the immediate agency that tells them how many hours per week they have to work and tells them where to have their offices and what their responsibilities are. Agreed. But it is a different arm of the state that determines the critical issue here. Which is what the fulcrum of the discrimination claim is not about we weren't hired or we were fired or we were made to work too many hours. The fulcrum is that the term and condition of our salary, our pension, our grade, our advancement are all dictated. And in the private sector, we had exactly that case in Brown v. Dakin, America, where it was not the case that the parent corporation set all the terms and conditions, but it was the parent corporation that said, we're going to have some layoffs. You're responsible for doing the layoffs. And you may not lay off any Japanese national in your American operation, which was a discrimination based on national origin. And we said, well, for this purpose, for this lawsuit, it is appropriate to treat it as a single employer. And if the only reason why that doesn't apply in the State is Galeno, it seems to me that is a clearly distinguishable case. And that's your argument? Yes, sir. So how would this work? So let's say there was one nurse practitioner plaintiff who was suing over a discriminatory salary and grade. And if the defendant is the DCS, what would the remedy be for the DCS to give that plaintiff a different salary and grade? Yes, but respectfully. The reason this case is being brought as a punitive class action is because that is not the situation. These people are not being treated. I understand the right locus of where we think relief should be awarded. So I'm. Yes. I know that there's going to be a class. So let's say there's one nurse practitioner plaintiff suing the DCS. So you would be asking a court to order the DCS to order the state health service to give that plaintiff a different salary and grade, right? Yes. The answer is yes. So then the relief would have to run through the direct employer anyway, right? Because the relief would be plaintiff specific. Yes, but it also would run through giving state funds. It's all state money. Let's say that that plaintiff brought two claims. One is about the discriminatory salary and grade, and the other one is about terminations or workplace conditions or something. Then you're saying that plaintiff should sue both the DCS and also the state health service because one is her employer for one purpose and the other is her employer for another purpose. I would. There's a third state agency that sets some other term of employment. There would be a third defendant because that would be the employer for that term of employment, right? I would say that if I was filing a Title VII case, I filed them all against the State of New York. That would be the answer to your question. So if I was filing under Title VII, as was done here, the State of New York was named because the State of New York, in effect, controls the DCS. And that would be appropriate even if the claim is about the workplace conditions at the particular state agency? Yes. The State of New York has. The State of New York, you're saying. So all Title VII claims for state employees should sue the State of New York as the defendant. Yes. The State of New York has control. If you have a hostile work environment claim for a client who works for a particular entity, you're saying you bring the. . . State agency. You're saying by entity you mean state agency.  You're saying you bring the hostile work environment claim against the State itself and not the agency that they work for. Is that what you're saying? What you would do is you would name the agency in it. You would explain where the individual is employed. You probably, as here, would name both the State of New York, because it is incidental to the relief. It's critical to the relief. And it's the person who does pay the check. But why would you do that here? I mean, you heard. . . It was done here. No, you didn't. . . you didn't bring the individual entities that they work for. Because. . . To the State and Department. Because, as Judge Lynch and I just went over, it's not a hostile work environment claim. It's not a claim that has anything to do with the individual agency. That's the simplest way to put it. Let me just finish this.  This is an important point. Just let me finish this point. Here, the individual agencies have absolutely nothing to do with discrimination. That's the point. The discrimination is being worked at the individual agencies. That's true. But they are not involved in the decision-making whatsoever. Nor can they. . . But I'm just saying doesn't the employer actually pay the salary? The employer is actually dispersing the money and deciding the salary. . . They're not deciding it. No. Well, they're doing it by reference to State regulations. They're not. . . But if those are discriminatory. . . Just imagine you were suing the actual employer. Let's say we said you couldn't sue the State. And then you brought the suit again against the State agency employer. And you said my client is being discriminated against in terms of the salary and grade. And the employer says, well, there's a State agency that tells us to do the salary and grade. Wouldn't you just say and wouldn't it make sense? Who cares? You're the one treating my client in a discriminatory fashion. I don't actually think. . . And so, therefore, you're liable for the discrimination. Respectfully, I don't think it makes sense. I think what makes sense is to bring, with regard to a Title VII suit, the suit against that entity, which is engaging, actually causing, if you will, the discrimination. The agency causing the discrimination here, according to the complaint, is civil service, an instrumentality of the State, which is why they're both here. But, Alex, that's not the way we normally think about discriminatory State laws and regulations, right? Normally, we don't sue the legislature when they pass a law that is alleged to be discriminatory. We sue the executive. You sue the legislature? Well, we say that we sue the State in that situation. Well, you sue the executive official who's carrying out the law, right? Well, again, depending. . . Here we are. . . The 1983. . . Doesn't it depend what you're doing? In other words, if you are seeking individual damages from somebody. . . Right. . . . you have a 1983 suit, often because the State has sovereign immunity. Here, the State has had its sovereign immunity. . . Abrogated. . . . abrogated by the civil rights statute.  Which makes it possible to sue the State as an entity. Incumbent to sue the State, particularly when you're seeking primarily injunctive relief, which we are here. And the point is, if we don't sue that entity which is, in fact, responsible, suing various agencies, Judge Menasci, we sue 20 different agencies, none of whom have the ability to provide that relief. None of them are in charge of doing the promulgation of the regulations which are relevant. So under this theory of proceeding, I would essentially be bringing 20 separate lawsuits, or however many separate lawsuits. However many agencies, which makes no sense from my point of view. Thank you.  We'll reserve the decision. Thank you very much. Have a good day. Thank you all.